UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICARDO CHERY, *et al.*,<br><br>              Plaintiffs,<br><br>       v.<br><br>TEGRIA HOLDINGS LLC,<br><br>              Defendant. | Case No. C23-612-MLP<br><br>ORDER |

## I.   INTRODUCTION

This matter is before the Court on Plaintiffs Ricardo Chery, Marcus McFarland, and Jasmine Siggers' (together, "Plaintiffs") (1) Unopposed Motion for Final Approval of Class Action Settlement (Approv. Mot. (dkt. # 38)) and (2) Motion for Attorney's Fees, Costs, and Service Awards (Fees Mot. (dkt. # 37)). No opposition has been filed to either motion. The Court held oral argument on December 4, 2024. (Dkt. # 46.) On December 5, 2024, Tegria filed a supplemental declaration. (Zenewicz Decl. (dkt. # 47).) Having considered the parties' submissions, the governing law, and the balance of the record, the Court GRANTS Plaintiffs' Approval Motion (dkt. # 38) and Fees Motion (dkt. # 37).

ORDER - 1

## II. BACKGROUND

Tegria "is a healthcare consulting and technology company that . . . provides training and support to hospitals as they implement new software to perform electronic record keeping." (Am. Compl. (dkt. # 28) at ¶ 18.) Tegria employs workers, such as Plaintiffs and other putative class members, "who perform such trainings and support services throughout the United States." (*Id.*) Plaintiffs allege they "routinely worked in excess of 40 hours a week" yet "were never paid time and a half[.]" (*Id.* at ¶¶ 24-25.)

On April 24, 2023, Plaintiffs brought this action for overtime pay against Tegria on behalf of themselves and all others similarly situated. (Dkt. # 1 at 1.) Plaintiffs brought claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York, California, Illinois, and Maine labor laws. (*Id.* at ¶¶ 75-120.) On June 12, 2023, the Court granted the parties' motion to stay proceedings pending mediation. (Dkt. # 21.) Mediation was successful and the parties reached a settlement in principle. (*See* dkt. # 23.)

On May 24, 2024, Plaintiffs filed an amended complaint along with an unopposed motion for preliminary approval of a class and collective action settlement. (Dkt. ## 28-29.) Plaintiffs assert claims for violations of the FLSA and the Washington Minimum Wage Act, RCW 49.46.130, and willful withholding of wages under Washington law. (Am. Compl. at ¶¶ 51-69.) In the alternative, Plaintiffs assert claims under New York, California, Illinois, and Maine labor laws. (*Id.* at ¶¶ 70-104.) Tegria has not yet filed an answer in this action.

The parties entered into an Amended Class and Collective Action Settlement Agreement and Release ("Settlement Agreement"), subject to the approval of the Court. (Settl. Agr. (dkt. # 38-2).) Plaintiffs seek to certify the following class pursuant to Federal Rule of Civil Procedure ("Rule") 23 for settlement purposes only:

ORDER - 2

>All individuals who were employed and paid by Defendant to provide software training to hospital workers in the United States at any time during the Relevant Time Period (defined as April 3, 2020, through March 31, 2023).

(Approv. Mot. at 4; *see* Settl. Agr. at ¶¶ 10(y), (cc).) The Settlement Agreement defines FLSA collective members identically. (*See* Settl. Agr. at ¶¶ 10(cc), (dd).) At oral argument, Tegria's counsel represented that Tegria changed its overtime policies at the end of the class period. (*See* dkt. # 46.)

The Settlement Agreement requires Tegria to pay a gross settlement amount of $1,500,000. (Settl. Agr. at ¶ 10(n).) This amount is non-reversionary. Any uncashed checks to class and FLSA members will be tendered to the unclaimed property fund in the state of the last known mailing address for that individual. (*Id.* at ¶ 37.) The $1,500,000 gross settlement amount will be allocated as follows:

>$1,084,411 in payments to class and FLSA members (72.3% of gross settlement)
>
>$375,000 in attorney's fees (25% of gross settlement)
>
>$11,300 in attorney's costs
>
>$15,000 in three $5,000 service payments to Plaintiffs
>
>$14,289 in settlement administration costs

(Approv. Mot. at 4; *see* Settl. Agr. at ¶¶ 24(a)-(c).) Any reduction in service payments to Plaintiffs or in attorney's fees and costs will be paid to class members. (Settl. Agr. at ¶¶ 24(a), (b)(i).)

Payments will be allocated 75% to Rule 23 class members and 25% to FLSA members, and a class/FLSA member may receive both types of payments. (Settl. Agr. at ¶ 26.) Rule 23 class members will receive payments unless they opted out, while FLSA payments will only be made to those who returned an opt-in form. (*Id.* at ¶¶ 27-28.) Rule 23 class members receive a

ORDER - 3

minimum $50 payment plus a *pro rata* share of the 75% allocation "based on their overtime damages as calculated by Class Counsel based on the data provided prior to mediation." (*Id.* at ¶ 29(b).) FLSA members will receive a *pro rata* share of the 25% allocation based on their calculated damages. (*Id.* at ¶ 29(c).)

In return, participating class and collective members release claims against Tegria as well as Tegria Services Group – US Inc., Providence Health & Services, and any parent, subsidiary, affiliate, agent, employee, assignee, insurer, or consultant thereof.[1] (Settl. Agr. at ¶ 10(x).) Claims released include any claims "that were or could have been asserted in the Complaint" (class members) or that "were or could have been pled based on the allegations in the Lawsuit" (FLSA collective members). (*Id.* at ¶¶ 12-13.)

The Court granted Plaintiffs' motion for preliminary approval of the Settlement Agreement. (Dkt. # 36.) The Court provisionally certified the class, preliminarily appointed Plaintiffs as class representatives and Harold L. Lichten of Lichten & Liss-Riordan, P.C., and Michael C. Subit of Frank Freed Subit & Thomas LLP as class counsel, and appointed Simpluris as settlement administrator. (*Id.*)

Denise Islas, a Simpluris project director, stated in a declaration that Tegria's counsel provided Simpluris with contact information for 216 class members. (Islas Decl. (dkt. # 38-3) at ¶¶ 1, 7.) On September 13, 2024, Simpluris mailed class notices to all class members. (*Id.* at ¶ 9.) After using "advanced address search (i.e. skip trace)" ultimately only two class notices remained undeliverable. (*Id.* at ¶ 11.) Simpluris also emailed class notices to 201 members with email addresses on file, all of which were successfully delivered. (*Id.* at ¶¶ 10, 12.) At oral

---

[1] At oral argument, Tegria indicated that the class members' employer is actually Tegria Services Group – US Inc. (*See* dkt. # 46.) Tegria's corporate disclosure statement indicates it is wholly owned by Providence Health & Services. (Dkt. # 44.)

ORDER - 4

argument, Plaintiffs' counsel represented that the two class members with undeliverable addresses did receive email notices. (*See* dkt. # 46.)

As of the October 28, 2024 deadline, Simpluris had not received any requests for exclusion, objections, or overtime damages disputes. (Islas Decl. at ¶¶ 13-16.) At oral argument, Plaintiffs' counsel confirmed that as of December 4, 2024, there had still been no requests for exclusion, objections, or disputes. (*See* dkt. # 46.) Ms. Islas stated that all 216 settlement class members will receive their Rule 23 portion of the settlement fund. (Islas Decl. at ¶ 17.)

Ms. Islas stated that, in addition, 66 FLSA collective action members who opted in will receive their FLSA portion of the settlement fund. (Islas Decl. at ¶ 17.) In the Approval Motion, Plaintiffs indicated more opt-in forms that were late or had curable defects were expected to be included in the final total. (Approv. Mot. at 2 n. 4.) On December 3, 2024, Plaintiffs filed opt-in forms for 82 FLSA collective members. (Dkt. # 45.) At oral argument, Plaintiffs' counsel noted that two additional opt-in forms were expected to have minor defects cured, for a final total of 84. (*See* dkt. # 46.) Considering both class and FLSA payments, the average estimated settlement payment is $5,025.03, the highest is $46,781.66, and the lowest is $50.00. (Islas Decl. at ¶ 19.)

### III.    DISCUSSION

#### A.    Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs seek relief for violations of the FLSA, 29 U.S.C. § 216(b). (Am. Compl. at ¶¶ 1, 51-61.) The Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367. The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 16.) *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1077 (9th Cir. 2017) ("Congress has

authorized magistrate judges to enter judgment in a class action so long as the named parties to the action have consented[.]").

**B.      Rule 23 Settlement Approval**

Before granting final approval of a class action settlement, the court must determine that (1) the class meets the requirements for certification under Rule 23(a) and (b); (2) notice to the class was adequate; and (3) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

   1.    *Class Certification*

In granting Plaintiffs' motion for preliminary approval, the Court provisionally certified the settlement class pursuant to Rule 23(a) and (b)(3). (Dkt. # 36 at 4.) No new information has come to light that undermines that conclusion. *See Juarez v. Soc. Fin., Inc.*, 2023 WL 3898988, at *3 (N.D. Cal. June 8, 2023) (certifying a settlement class for final approval when no material changes occurred between preliminary and final certification). The Court concludes the settlement class should be finally certified.

   2.    *Notice*

The Court must determine whether Settlement Class members received the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), were fully discharged.

CAFA requires a settlement defendant to provide notice of the proposed settlement to "the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The Settlement Agreement provides that within ten days after the Settlement Agreement was submitted to the Court, Tegria would send notices pursuant

ORDER - 6

to CAFA "to the extent required by applicable law, to the appropriate federal and state officials." (Settl. Agr. at ¶ 39.) Tegria's counsel affirmed in a declaration that the notices had been sent. (Zenewicz Decl. at ¶¶ 3-5.)

The Court previously determined that the class notice form and procedure satisfied due process and provided the best notice practicable. (Dkt. # 36 at 6.) Postal mail notices reached 214 of 216 class members, and email notices reached the other two class members. (Islas Decl. at ¶¶ 9, 11; *see* dkt. # 46.) The notice program as implemented satisfies Rule 23(c)(2)(B) and due process.

          3.      *Fair, Reasonable, and Adequate Settlement Terms*

Rule 23(e)(2) requires the court to find that a settlement "is fair, reasonable, and adequate" before granting final approval. Fed. R. Civ. P. 23(e)(2). The Court must consider whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment;

        (iv) any agreement required to be identified under Rule 23(e)(3), [*i.e.*, any agreement made in connection with the proposal]; and

    (D) the proposal treats class members equitably relative to each other.

*Id.*

i. Rule 23(e)(2)(A), Class Representatives and Counsel

Class counsel is experienced in wage-and-hour litigation. (Approv. Mot. at 7.) Plaintiffs state they "provided valuable guidance" to class counsel, and served despite concerns that their involvement would harm future employment opportunities. (*Id.*) There is no indication of any conflict of interest between Plaintiffs and the rest of the class. Plaintiffs are in the same position as other class members, seeking overtime pay for work in excess of 40 hours per week. The proposed $5,000 service awards do not undermine Plaintiffs' adequacy as representatives because the settlement is not dependent on or tied to the awards, nor does the award structure create a conflict of interest with the class. *Cf. Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009) (Incentive agreements "created an unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other.").

ii. Rule 23(e)(2)(B), Arm's Length Settlement

The settlement proposal was negotiated at arm's length. Tegria provided Plaintiffs' counsel payroll data to determine class members' damages. (Approv. Mot. at 7-8.) The parties then engaged in mediation with "well-known wage-and-hour mediator, Hunter Hughes." (*Id.* at 7.) There are no indicia of collusion.

iii. Rule 23(e)(2)(C), Adequate Relief

Rule 23(e)(2)(C) sets forth four specific factors, in addition to general adequacy of the relief: costs and risks of trial, effectiveness of relief distribution, terms of attorney's fees, and side agreements. The first factor, costs and risks of trial is addressed below as part of the adequacy analysis. The second, third, and fourth factors weigh in favor of approval. Mailing checks directly to class members is an effective distribution method. The settlement is not

ORDER - 8

dependent on attorney's fees, and the proposed attorney's fees of 25% are in line with widely accepted benchmarks. Regarding the fourth factor, no side agreements have been made.

In assessing whether relief provided by a settlement is adequate, the Ninth Circuit has expanded on Rule 23(e)(2)(C) by identifying the following factors for district courts to consider:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (alterations in original). "District courts may consider some or all of these factors." *Id.*

A "'higher standard of fairness' . . . applies when parties settle a case before the district court has formally certified a litigation class." *Campbell*, 951 F.3d at 1121 (quoting *Hanlon*, 150 F.3d at 1026). This is because "earlier settlements can make it 'more difficult to assess the strengths and weaknesses of the parties' claims and defenses, to determine the appropriate definition of the class, and to consider how class members will actually benefit from the proposed settlement[.]'" *Id.* at 1122 (quoting *Newberg on Class Actions* § 13:13 (5th ed.)). This warning rings true in this case, where Tegria has not even filed an answer. The Court has no record to assess what defenses Tegria might raise or how meritorious they may be, beyond Tegria's denial of liability in the Settlement Agreement. (*See* Settl. Agr. at ¶ 6.) Nevertheless, the class is well defined and the benefit to them is clear. The Court applies a higher standard of scrutiny under these circumstances, but ultimately finds the standard is met.

Applying the relevant factors identified by the Ninth Circuit, the strength of Plaintiffs' case, the risk and expense of further litigation, and the likelihood of maintaining class status are

somewhat uncertain because the Court has no information on Tegria's potential defenses. However, some informal discovery has taken place between the parties. In the motion for preliminary approval, Plaintiffs stated that the parties "agreed to an exchange of classwide data and information" to facilitate mediation. (Dkt. # 29 at 3.) Tegria "provided comprehensive data with thousands of entries recording the days and hours worked by each putative class member, as well as his or her hourly rate[.]" (*Id.* at 10.) Although this case is in its early stages, the Court finds the parties had sufficient information to assess the strengths of each other's cases as well as the risks of further litigation and chose to settle early. These factors weigh in favor of approval of the settlement. Plaintiffs' counsels' extensive experience in this area of law, addressed further below, also weighs in favor of approval.

The Court finds the amount offered in settlement weighs strongly in favor of approval. Plaintiffs estimate the gross settlement amount represents about 80% of their "estimated classwide recovery" if they prevailed at trial. (Approv. Mot. at 2.) Payments to class members, approximately 72% of the gross settlement amount, would thus represent roughly 60% of their damages. The payout to class members is comparable to what they could expect if they prevailed at trial, assuming typical contingency attorney's fees, without the risks of further litigation. The reaction of class members further supports approval. No member opted out of the settlement, objected, or disputed the amount tentatively allocated to them. (Islas Decl. at ¶¶ 13-16.)

Overall, the relevant factors weigh strongly in favor of approval. Most importantly, the amount offered to class members is substantial relative to their alleged damages.

4. *Rule 23(e)(2)(D), Equitable Treatment*

The Settlement Agreement treats class members equally, providing shares of the settlement fund in proportion to how many hours they worked overtime. The three $5,000

ORDER - 10

awards to Plaintiffs are reasonable, do not significantly diminish the over $1 million that will be paid to class members, and do not affect the equity of the class compensation as a whole.

### 5. *The Settlement Agreement is Approved*

The Court finds the factors outlined in Rule 23(e)(2) weigh in favor of approving the settlement. The benefits to the class are clear, providing a substantial portion of their alleged damages without the risks of continued litigation. The benefits are easy to access, as class members will receive their benefits automatically. The Court approves the Settlement Agreement.

### C. FLSA Collective Action

An employee's claims under the FLSA are "nonwaivable." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Accordingly, settlement of FLSA claims requires court approval. *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.") (citing *Barrentine*, 450 U.S. at 740).

Before approving a settlement, the Court "examines whether a settlement is a fair and reasonable resolution of a bona fide dispute." *Cavazos v. Salas Concrete Inc.*, 2022 WL 506005, at *5 (E.D. Cal. Feb. 18, 2022). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citation and quotation marks omitted). Here, a bona fide dispute is evidenced by Plaintiffs' facially meritorious claim and Tegria's denial of liability.

In determining whether a settlement is fair and reasonable, "many courts begin with the well-established criteria for assessing whether a class action settlement is 'fair, reasonable, adequate' under Fed. R. Civ. P. 23(e)," but must give "due weight to the policy purposes behind the FLSA." *Selk*, 159 F. Supp. 3d at 1172. Factors a court should consider include:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* at 1173.

Most of these factors are addressed in the Rule 23 analysis. The scope of release in the Settlement Agreement does not raise any red flags; FLSA members release only the claims that are being settled or that could have been brought based on the same allegations. *See Selk*, 159 F. Supp. 3d at 1178 ("Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation.").

The settlement amount represents about 60% of FLSA members' damages, meaning they could recover more after trial, but at the expense of motions practice and trial as well as attorney's fees. *See Selk*, 159 F. Supp. 3d at 1175 (approving settlement providing FLSA collective members "between 26% to 50% of the best possible recovery").

The proposed settlement appropriately serves the FLSA's purposes. "The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours." *Selk*, 159 F. Supp. 3d at 1171 (citing *Barrentine*, 450 U.S. at 739). Plaintiffs' allegations of underpayment for overtime work, if proven, would undoubtedly offend the policy purposes behind the FLSA.

Having considered the relevant factors and the representations of the parties, the Court finds that the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage. The Court approves the FLSA collective action portion of the Settlement Agreement.

### D.     Attorney's Fees, Costs, and Service Awards

#### 1.     Attorney's Fees

In an FLSA action, courts must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Rule 23(h) permits a court to award "reasonable attorney's fees and nontaxable costs" in a certified class action pursuant to the parties' agreement. "While attorneys' fees and costs may be awarded in a certified class action . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, district courts may award fees in common fund cases like this one under either the lodestar method or the percentage-of-recovery method. *Id.* at 942.

Under the percentage-of-recovery method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award" for common fund cases. *Bluetooth*, 654 F.3d at 941. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* Factors that may be relevant to this determination include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by

ORDER - 13

the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Ultimately, the fee award must be "reasonable under the circumstances." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotation omitted).

"The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023). The results achieved here weigh in favor of the 25% benchmark. Class members will receive checks, some quite substantial, without having to file claims or do anything. They could increase their payments by filling out a simple opt in claim form, providing contact information and identification number, to receive the FLSA payment as well. (*See* Settl. Agr., Ex. A at 7.)

Class counsel is experienced, further suggesting that the outcome was the most favorable possible. Mr. Lichten has specialized in wage-and-hour class action for about twenty years. (Lichten Decl. (dkt. # 37-2) at ¶ 3.) He has been lead counsel in numerous class and collective actions. (*Id.* at ¶ 6.) He has been assisted in this case by Matthew Thomson and Matthew Patton, who have approximately a decade and four years' experience, respectively, representing workers in wage-and-hour cases. (*Id.* at ¶¶ 9-11.) Local counsel Mr. Subit has worked on dozens of wage-and-hour class actions in Washington. (*Id.* at ¶¶ 16-17.)

The Court concludes 25% is an appropriate benchmark here. Even where the 25% benchmark is supported, the Ninth Circuit encourages district courts to cross-check attorney's fees calculations against a second method. *See Bluetooth*, 654 F.3d at 944. The lodestar method is based on the number of hours worked and a reasonable hourly rate. Comparison to the lodestar method should be used cautiously here because "the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1050 n. 5. Early settlement benefits class members, however.

ORDER - 14

*See id.* ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief.").

Plaintiffs calculate a lodestar of $79,010, based on hourly fees from $350 to $900. (Fees Mot. at 11; Lichten Decl. at ¶ 21.) They contend this is a very low estimate because Mr. Lichten does not keep contemporaneous logs of his time and thus the 40 hours attributed to him is conservative. (Lichten Decl. at ¶ 23.) In addition, the attorneys continue to work on finalizing and administering the settlement. (*Id.* at ¶ 24.) Notably, Plaintiffs do not include any non-attorney time in their lodestar. Given Plaintiffs' proffered lodestar, the requested attorney's fees represent a multiplier of 4.7.

The 4.7 multiplier is relatively high. *Cf. Kurtz v. RHHC Trios Health, LLC*, 2024 WL 3930500, at *15 (E.D. Wash. Aug. 23, 2024) (approving "a percentage-of-the-recovery award in the amount of 27% of" the gross settlement amount, "representing a 1.25 positive multiplier from the relevant lodestar"); *In re Infospace, Inc.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (in a securities action, the Court found "a lodestar multiplier of 3-4 more than adequately compensates counsel's risk of nonpayment" where the "case never progressed beyond the pleading stage"). Nevertheless, counsel has achieved results for the class better than those found in comparable cases. Moreover, the Court does not wish to discourage early settlement that benefits class members. As a cross-check, a 4.7 multiplier is somewhat high but not markedly higher than in similar cases, thus validating the percentage approach here. *See Vizcaino*, 290 F.3d at 1051 (Affirming 3.65 multiplier, noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." (citation omitted)).

ORDER - 15

The 25% fee sought here is presumptively reasonable. The Court approves the fee request.

### 2.  Costs

"The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlement." *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)). Class counsel's expenses, which total $11,300.69, are largely due to the $10,000 fee for mediation. (Lichten Decl. at ¶ 28.) The Court finds the costs reasonable and approves the request.

### 3.  Service Awards

Incentive or service awards of $5,000 are presumptively reasonable. *See, e.g., Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) (noting that "[s]ervice awards as high as $5,000 are presumptively reasonable" in the Ninth Circuit and collecting cases holding the same); *In re Infospace*, 330 F. Supp. 2d at 1216 (approving a $5,000 and $6,000 service award). Plaintiffs "regularly consulted" with class counsel. (Fees Mot. at 13.) Plaintiffs had "potential concerns that being publicly identified with the case would negatively affect future employment opportunities." (Approv. Mot. at 7.) Incentive awards may compensate for "reputational risk undertaken in bringing the action[.]" *Rodriguez*, 563 F.3d at 958. The Court finds the requested awards reasonable and approves the request.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Approval Motion (dkt. # 38) and Fees Motion (dkt. # 37) and ORDERS as follows:

(1)  The following Rule 23 class, which was preliminarily certified, is finally certified for settlement purposes:

 All individuals who were employed and paid by Defendant to provide software training to hospital workers in the United States at any time during the Relevant Time Period (defined as April 3, 2020, through March 31, 2023).

(2) The Court confirms the appointment of Plaintiffs Ricardo Chery, Marcus McFarland, and Jasmine Siggers to represent the Rule 23 settlement class.

(3) The Court confirms the appointment of Harold L. Lichten of Lichten & Liss-Riordan, P.C., and Michael C. Subit of Frank Freed Subit & Thomas LLP as class counsel, and Simpluris as settlement administrator.

(4) The Court finds that adequate notice was provided to the class.

(5) The Court approves the Settlement Agreement as fair, reasonable, and adequate.

(6) The Court approves the FLSA portion of the Settlement Agreement on behalf of all opt-in members as a reasonable resolution of a bona fide dispute.

(7) The Court approves class counsel's request for $375,000 in attorney's fees and $11,300 in costs.

(8) The Court approves service awards for Plaintiffs of $5,000 each.

(9) Settlement funds shall be distributed in accordance with the Settlement Agreement.

(10) The Court directs that this action be dismissed without prejudice as of the date of this final approval Order, to be converted to a dismissal with prejudice **thirty (30) days** after the conclusion of the check-cashing period and in full and final discharge of Plaintiffs' released claims, eligible settlement class members' released claims, and participating settlement collective members' released claims. In accordance with the Settlement Agreement, class counsel shall file notice with the Court within **thirty (30) days** after the check-cashing period. (*See* Settl. Agr. at ¶ 36.)

Dated this 6th day of December, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 18